CHARLES et al., Respondents, v. ST. LOUIS, MEMPHIS & SOUTHEASTERN RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, April 2, 1907.

1. RES ADJUDICATA: Identity of Subject-Matter: Issues that Might Have Been Determined. The plea of *res adjudicata* applies not only to points upon which the court was actually required by the parties to pronounce a judgment, but to every point which expressly belonged to the subject of litigation and which the parties exercising reasonable diligence might have brought forward at the time.

2. ————: ————: Rental Value of Land. Where the owner of land, a part of which was cut off from the rest of his tract by a railroad, brought suit to recover for damage caused by the failure of the railroad company to construct a crossing under the railroad so as to render the part cut off accessible, which crossing was provided for in the decree by which the right of way was condemned, and where the plaintiff recovered the rental value of the land up to the date of the commencement of the suit, this did not bar a subsequent action for damages which afterwards accrued by reason of the failure to construct the crossing.

3. ————: ————: ————. It is only where the injury to the land occasioned by the commission of a nuisance is of a permanent character and goes to the entire value of the estate that compesation for the whole injury can be recovered in one suit.

4. PRACTICE: Instruction: Interpretation of Written Instrument by Jury: Harmless Error. In an action based upon a decree of court, it was error to submit to the jury an instruction authorizing them to interpret the decree, but where the jury correctly interpreted the decree and there was no controversy as to its terms, the error was harmless.

Appeal from Jefferson Circuit Court.—*Hon. Joseph J. Williams*, Judge.

AFFIRMED.

Charles v. Railroad.

*L. F. Parker* and *Moses Whybark* for appellants.

(1) All matters tried in this case were involved in the former case, and the judgment in the former case was conclusive as to all subsequent matters which might have been presented and determined therein. 24 Am. and Eng. Ency. of Law (2 Ed.), p. 781, sec. 5; Laffoon v. Fretwell, 24 Mo. App. 258; Dickey v. Heim, 48 Mo. App. 118; Mason v. Summers, 24 Mo. App. 174; Barkhoeffer v. Barkhoeffer, 93 Mo. App. 373; Hamilton v. McLean, 169 Mo. 51. (2) This instruction submits to the jury the construction of the provision of the decree of condemnation under which the plaintiffs are seeking to recover. It was the duty of the court to declare what that provision of the decree meant, and it was error to submit that fact to the jury, as the instruction did. McQuillin on Instructions, pp. 39, 40, sec. 58; Bank v. Fry, 168 Mo. 514; Lumber Co. v. Warner, 93 Mo. 384; McClurg v. Whitney, 82 Mo. App. 631.

*Clyde Williams* and *H. Chouteau Dyer* for respondents.

(1) The questions determined in the former suit between these same parties were not identical with the questions here presented. Even had it been possible to have presented the questions arising in this suit for determination in the former the fact that these questions were not presented removes all basis for the application of the doctrine of *res adjudicata.* Cromwell v. Sac County, 94 U. S. 353; Tutt v. Prince, 7 Mo. App. 197; Dickey v. Heim, 48 Mo. App. 114; Garland v. Smith, 164 Mo. 22; Bielman v. Railroad, 50 Mo. App. 151; Scott v. Nevada, 56 Mo. App. 189. (2) "Where the extent of the wrong may be apportioned and does not go to the entire destruction of the estate or its beneficial use separate actions not only may but must be brought to recover the damages sustained." Ivie v. Munigal, 66 Mo. App. 437; Bielman v. Railroad, 50 Mo. App. 156; Ready

v. Railroad, 98 Mo. App. 467; Bare v. Hoffman, 79 Pa. St. 71; Freeman v. Sayre, 48 N. J. L. 71; Cobb v. Smith, 38 Wis. 35; Uline v. Railroad, 101 N. Y. 109; Canal Co. v. Hitchings, 65 Me. 140.

STATEMENT.—Plaintiffs are husband and wife, and in 1903 Mrs. Charles owned, and now owns, a dairy farm of one hundred and seventy-three acres in Jefferson county, upon which she and her husband reside. The defendant railroad company, in 1903, located its railroad over a portion of said farm in a manner to cut off 13.37 acres from the main body of the tract. Proceedings by the railroad company to condemn a right of way across said farm resulted in a decree containing the following provisions:

"And it is further ordered and adjudged by the court that the St. Louis, Memphis & Southeastern Railroad Company shall construct and forever maintain a crossing underneath its tracks in the draw at about station 404 plus eighty-seven feet, by excavating the natural draw or drain at that point so as to give a crossing that shall be fourteen feet wide and have a perpendicular clearance of not less than eight feet, for the passage of cattle underneath the track of the said railroad at that point, and that said railroad company shall provide a crossing at grade at station 401."

On December 9, 1904, plaintiffs brought suit to recover damages, in the Jefferson Circuit Court, based on the alleged failure of the railroad company to keep and perform the provisions of the decree rendered in the condemnation proceedings, and for maintaining a nuisance, whereby plaintiffs were deprived of the use of the 13.37 acres cut off from the main body of their farm by the railroad. The petition in the suit, after stating preliminary matters, alleged:

"Plaintiffs further state that defendant in the construction of their right of way through plaintiffs' land as aforesaid, caused to be erected an embankment of

varying height and caused their said right of way to be fenced on either side, thereby cutting off and separating from the main body of plaintiffs' land an irregular tract of land comprising 13.37 acres, more or less.

"Plaintiffs state that under the judgment and decree, made and entered as aforesaid, defendants were ordered to construct and forever maintain a crossing underneath its tracks in the draw at about station No. 404 plus eighty-seven feet for the purpose of enabling plaintiffs to have access and use of said 13.37 acres, more or less, as pasture land, for which purpose plaintiffs formerly used and would now use said aforesaid tract of land.

"Plaintiffs state that the defendants have failed to comply with that part of said judgment and decree providing for the construction and maintenance of said underneath crossing, in that they have not constructed and maintained such a crossing as provided for in said decree, and have fenced and kept fenced said right of way in and about the location of the crossing provided for in said decree, and defendants' failure, as aforesaid, has deprived plaintiffs of the use and benefit of said tract of land, aforesaid, to their damage in the sum of one thousand dollars, for which sum and their costs plaintiffs pray judgment."

The answer was a general denial.

The court gave the following instruction on the measure of damages:

"2. The court further instructs you that if you find a verdict for the plaintiffs, you will assess their damages at such sum as, from the evidence, you may find they have been damaged by reason of the failure of said St. Louis, Memphis & Southeastern Railway Company to construct and maintain such cattle-pass, from the time of the completion of said railway over the lands of plaintiffs to the time of the commencement of this suit on De-

cember 9, 1904, not to exceed the sum of one thousand dollars, the amount sued for in this action."

The jury found for plaintiffs and assessed their damages at seventy-five dollars, which the railroad company paid.

The present action is to recover damages which have accrued since the first suit, caused by an alleged failure of the railroad company to construct and maintain an undergrade crossing, as required by the decree rendered in the condemnation proceedings. The breach of said provision is alleged in the petition as follows:

"Plaintiffs further state that the defendant, in the construction of their right of way through plaintiffs' land, as aforesaid, caused to be erected an embankment of varying height, and caused their said right of way to be fenced on either side, thereby cutting off and separating from the main body of plaintiffs' land an irregular tract, comprising 13.37 acres, more or less.

"Plaintiffs state that under the judgment and decree made and entered as aforesaid, defendants were ordered to construct and forever maintain a crossing underneath its tracks in the draw at about station 404 plus eighty-seven feet, for the purpose of enabling plaintiffs to have access and use of 13.37 acres, more or less, as pasture land, for which purpose plaintiffs formerly used and would now use said aforesaid tract of land.

"Plaintiffs further state that the defendants have failed and refused and still fail and refuse to comply with that part of said judgment and decree in the condemnation proceedings aforesaid providing for the construction and maintenance of said underneath crossing, in that they have failed to construct and maintain such a crossing as provided for in said decree and have fenced and kept fenced said right of way in and about the location of the crossing provided for in said decree, and defendants' failure and negligence as aforesaid have deprived the plaintiffs of the use and benefit of said 13.37-

acre tract of land aforesaid, to their damage in the sum of three hundred dollars."

The answer was a general denial and an allegation of the following new matter:

"That the plaintiffs had theretofore instituted against them a suit in the circuit court of Jefferson county, Missouri, involving the same matters set forth in this case, and embracing the same subject-matter of action; that they appeared in the case, and it was tried before a jury at the May term, 1905, of said circuit court, and plaintiffs recovered a judgment against the defendant, St. Louis, Memphis & Southeastern Railroad Company, which was paid them by said defendant before the institution of this suit, and that all matters growing out of and involved in the issues in this case were involved in the issues in the former case, and were or might have been tried in that case, and the plaintiffs are precluded and barred from prosecuting this suit by the said former suit.

"For a reply the plaintiffs admit that they instituted that suit about the ninth day of December, 1904, but aver that it was for the rental or productive value of the said 13.37 acres of land cut off from the main body of plaintiffs' land from the time of the completion of the railroad up to the time of the filing of the suit, and admit that they obtained a judgment against said St. Louis, Memphis & Southeastern Railroad Company for the same; but deny that the cause of action stated in their petition in this suit embraces the same matter and the same subject-matter of action as the former suit, and deny that the matters growing out of and involved in the issues in this case were involved in the former suit."

The case was tried January 26, 1906, and a verdict and judgment for seventy-five dollars was recovered for plaintiffs.

On the part of plaintiffs, the evidence tends to show the rental value of the 13.37 acres was from twenty to

.twenty-five dollars per acre per annum. The small tract, as was all the farm prior to the construction of the railroad, was used for grazing purposes. There was no water on the small tract but there was everlasting, living water on another part of the farm on the opposite side of the railroad. The evidence shows defendant made an opening under the track at the point designated by the decree, but made it twelve instead of fourteen feet wide, and from six to six and one-half feet instead of eight feet deep, and plaintiffs' evidence tends to show that the grade down to the opening was forty-five degrees, so steep that cattle would not go down it into the opening, and that the opening itself was so obstructed by mud, rock and water that cattle could not get through it. The idea we get of the opening and its location, from photographs offered as exhibits and the meager description of it by witnesses, is about this: That the draw where it was made furnishes a natural drainage way for the surface water from the 13.37 acres of land; that ditches along the side of the tract lead into the opening, and the surface water and the water from these ditches carries rock, gravel and mud into the opening, in which water stands from ten to fifteen inches deep, and for these reasons the opening is of no practical benefit to plaintiffs as a crossing for their cattle.

Defendant's evidence tends to show that by cutting down the grade beyond its right of way on to plaintiffs' land, a reasonable approach to the opening could be made; and by cutting a ditch from the opening on and through a portion of plaintiffs' land, the way could be kept free of water and mud; that defendant offered to dig such a ditch but plaintiffs refused to permit it to be dug on their land.

BLAND, P. J. (after stating the facts).—1. At the close of plaintiffs' evidence and again at the close of all the evidence, defendant offered instructions in the na-

ture of demurrers to the evidence. The first error assigned by defendant is the refusal of the court to grant either of these instructions. Its contention is that all matters tried in the case were involved in a former suit and the judgment in that suit is conclusive as to all subsequent matters which might have been presented and determined therein. Quoting from Henderson v. Henderson, 3 Hare l. c. 114, the Supreme Court in Donnell v. Wright, 147 Mo l. c. 646-7, 49 S. W. 874, said: "Where a given matter becomes the subject of litigation in, and of adjudication by, a court of competent jurisdiction, the court requires the parties to bring forward their whole case, and will not (except under special circumstances) permit the same parties to open the same subject of litigation in respect of matter which might have been brought forward as part of the subject in contest, but which was not brought forward, only because they have, from negligence, inadvertence or even accident omitted part of their case. The plea of *res adjudicata* applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence might have brought forward at the time." That this is the accepted doctrine in this State see Hamilton v. McLean, 169 Mo. 51, 68 S. W. 930; City of Salisbury v. Patterson, 24 Mo. App. 174; Laffoon v. Fretwell, Ib. 258; Dickey v. Heim, 48 Mo. App. 114; Barkhoefer v. Barkhoefer, 93 Mo. App. 373, 67 S. W. 674. In the former suit the recovery was limited by the instructions to the rental value of the land from the date when the cattle-way should have been made to the date of the commencement of the suit. Were plaintiffs entitled to recover in that suit a lump sum for all the damages that had and would accrue in the future by reason of the failure and refusal of the railroad company to con-

struct and maintain a cattle-way, as required by the decree in the condemnation proceedings? and did the allegations of the petition warrant such a recovery? are vital questions in the determination of the defendant's plea of *res adjudicata.* The petition in the first suit alleged that by reason of the failure of defendant to construct and maintain the undergrade crossing, defendant had "deprived plaintiffs of the use and benefit of said 13.37-acre tract of land aforesaid, to their damage in the sum of three hundred dollars." The evidence tends to show the land was worth at least one hundred dollars per acre. The petition only counted on the damages which had accrued, not for both present and prospective damages from the continuation of the nuisance. The contract (the decree), for a breach of which by the maintenance of a nuisance described in the petition, could have been performed by defendant and the nuisance removed at any time, by constructing the undergrade crossing, thereby preventing future injury. In these circumstances, plaintiffs were only entitled to compensation for the loss actually sustained prior to the first suit. [Pinney v. Berry, 61 Mo. 1. c. 367.] It is only where the injury to land, occasioned by the commission of a nuisance, is of a permanent character and goes to the entire value of the estate that compensation for the whole injury can be recovered in one suit. When the injury is "susceptible of periodical apportionment," redress may be had by successive suits. [Van Hoozier v. Railroad, 70 Mo. 145; Ivie v. McMunigal, 66 Mo. App. 1. c. 441.] Sutherland says: "Successive actions may be brought if the nuisance continues by the continuous fault of the defendant. . . If it continues afterwards (after the first suit) the damages resulting therefrom can only be recovered by a new suit, and they may be so recovered, for every continuance of the nuisance is a new nuisance." [4 Sutherland (3 Ed.), sec. 1038.] At section 127, vol. 1, the same author says: The necessity

and advantage of successive actions to recover damages which proceed from a continuous and still operating cause are very obvious; for, besides the considerations which have already been mentioned, the injurious effects so blend together that in most instances it would be wholly impracticable to accurately apportion them. Therefore, the right to recover for all damages which have been suffered to the time of bringing the first action, in the next, all damages which have been suffered from that time to that of commencing such second action and so on while the cause continues, is the most convenient course for practical redress that can be devised."

In Jones v. Lavender, 55 Ga. 228, it was held: "Where the plaintiff might, without any new act on the part of defendant after a former suit was commenced, have sustained damage between the time of instituting that suit and the time of instituting the present suit, and such damage might have resulted from the same positive acts complained of in the former suit by reason of the longer continuance of the state of things which those acts established, a verdict for defendant in the former suit is not conclusive upon the plaintiff in the latter."

On these authorities, we think it is clear that plaintiffs were not estopped by the first suit from prosecuting the present one.

2. The giving of the following instruction for plaintiffs is alleged to be error, to-wit:

"The court instructs the jury that if you find and believe from the evidence, that the plaintiff, Catherine Charles, was at the time mentioned in the evidence and is now the owner of the tract of land through which you may find, from the evidence, the St. Louis, Memphis & Southeastern Railway runs, and that the plaintiff, Thomas A. Charles, is her husband, and if you further find and believe, from the evidence, that by decree of the circuit court of Jefferson county, Missouri, made and en-

tered the seventeenth day of September, 1903, in a certain cause wherein plaintiffs herein were defendants and the St. Louis, Memphis and Southeastern Railway Company was plaintiff, said railway company became bound by said decree to construct and maintain a crossing underneath said railway fourteen feet in width and eight feet in height for the use of plaintiffs at the place and manner designated in said decree; and if you further find and believe, from the evidence, that the defendant, St. Louis, Memphis & Southeastern Railway Company, has failed to construct and maintain said crossing as aforesaid, then your verdict must be for the plaintiffs. And plaintiffs are entitled to recover such damages as you may find, from the evidence, they may have suffered since December 9, 1904, to December 6, 1905, by reason of defendant's failure to construct and maintain said crossing, if you so find and believe, but not to exceed in amount the sum of three hundred dollars, the amount sued for in this action."

The instruction erroneously submitted to the jury the construction of the provisions of the decree of condemnation under which plaintiffs sought to recover. Where written instruments are offered in evidence, it is the duty of the court to construe them and instruct the jury what they mean and their legal effect. [McClurg v. Whitney, 82 Mo. App. l. c. 631, and cases cited; Nelson v. Hirsch & Sons, 102 Mo. App. l. c. 513, 77 S. W. 590; National Bank of Plattsburg v. Fry, 168 Mo. l. c. 514; Black River Lumber Co. v. Warner, 93 Mo. l. c. 384, 6 S. W. 210.] But we do not think defendant was prejudiced by the error, as the result shows the jury properly interpreted the decree, that is, they found defendant was obliged by its terms to construct and maintain a crossing fourteen feet in width and eight feet in height, underneath its railroad at the place designated in the decree, for plaintiffs' use; in fact, there was no controversy over the terms of the decree, and they are so

plain that the jury could not have misinterpreted them. No reversible error appearing, the judgment is affirmed. All concur.